UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LOUIS MATTHEW CLEMENTS,

Petitioner,

v. Case No. 2:24-cv-294-SPC-NPM

SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondent.

---

**OPINION AND ORDER**

This cause is before the Court on a 28 U.S.C. § 2254 petition for habeas corpus relief filed by Petitioner Louis Matthew Clements. (Doc. 1). He challenges his 2008 conviction in Florida state court for lewd and lascivious conduct, in violation of Fla. Stat. § 800.04(6). The case was originally assigned to the Honorable John E. Steele. Judge Steele dismissed the petition for lack of jurisdiction on the ground Clements is not "in custody" within the meaning of § 2254(a). (Doc. 4). The Eleventh Circuit vacated that order and remanded for further development of the issue. (Doc. 21); *Clements v. Sec'y, Dep't of Corr.*, No. 24-11353, 2025 WL 1892401 (11th Cir. July 9, 2025) ("*Clements II*"). After the parties were afforded an opportunity to conduct discovery, submit evidence, and brief the matter, Judge Steele passed , and the

action was reassigned to the undersigned on July 21, 2026. (Doc. 34). The Court now again concludes Clements is not "in custody." Here's why.

## I. Background and Procedural History

In June 2008, Clements pleaded guilty in the Circuit Court of Lee County, Florida, to a count of lewd and lascivious conduct, in violation of Fla. Stat. § 800.04(6). That conviction was based on an amended information charging that, between June 1, 2006, and March 1, 2007, Clements, being at least 18 years old, had sexual intercourse with a female more than 12 years old but less than 16 years old.[1] On June 11, 2008, the trial court entered a judgment sentencing him to five years of sex-offender probation, the terms of which "provided that he qualified and shall register with the Florida Department of Law Enforcement as a sexual offender pursuant to Fla. Stat. § 943.0435." Clements did not appeal.

In November 2008, he was charged with violating the terms of his probation. He pleaded guilty to the violation. On January 8, 2009, the trial court entered a new judgment finding him in violation of his probation and sentencing him to 57 days in county jail, while continuing the term of his

---

[1] The Court takes judicial notice of online state court dockets and records related to Clements's conviction and state collateral attacks. *See Oliver v. Florida*, 803 F. App'x 305, 306 (11th Cir. 2020); *see State v. Clements*, 07-CF-017171 (Fla. Lee County Cir. Ct.), see https://matrix.leeclerk.org/; https://acis.flcourts.gov/portal/home. The Court also takes judicial notice of its own records from other cases involving Clements. *See McBride v. Sharpe*, 25 F.3d 962, 969 (11th Cir. 1994).

probation under the original judgment. (*See Clements v. Sec'y, Dep't of Corr.*, 2:17-cv-396-JLB-NPM (M.D. Fla.) ("*First Habeas*"), Doc. 25-1 at 111–18). Clements did not appeal.

On February 17, 2009, Clements filed a *pro se* motion in the trial court seeking to withdraw his guilty plea as involuntary, alleging he had been pressured by his attorney and family. (*First Habeas*, Doc. 25-1 at 121). He was appointed counsel, who filed an amended motion to withdraw the plea, citing Fla. R. Crim. P. 3.170(*l*). (*Id.* at 123). Following an evidentiary hearing, the trial court denied the motion on April 13, 2009. (*Id.* at 133–55). Clements appealed. However, on November 24, 2009, Clements's counsel filed a motion or notice to voluntarily dismiss the appeal. (*Id.*, Doc. 25-2 at 4). The Florida Second District Court of Appeal ("Second DCA") entered an order dismissing the appeal on December 2, 2009. (*Id.* at 6); *Clements v. State*, 22 So. 3d 78 (table), 2009 WL 4756422 (Fla. Dist. Ct. App. 2009).

Meanwhile, on November 25, 2009, Clements filed another *pro se* motion in the state trial court seeking postconviction relief under Fla. R. Crim. P. 3.850, raising claims that his trial counsel was ineffective. (*First Habeas*, Doc. 25-2 at 8–15). The trial court granted an evidentiary hearing and appointed counsel. (*Id.* at 20–22). On April 28, 2010, the trial court denied the motion. (*Id.* at 24–26).

Clements did not timely appeal the denial of that Rule 3.850 motion. He did later pursue a blizzard of *pro se* filings in the Florida appellate courts seeking a belated collateral appeal. Ultimately, however, those efforts proved unsuccessful.

In July 2017, roughly four years after the expiration of his probationary sentence, Clements filed his first § 2254 federal habeas petition. (*First Habeas*, Doc. 1). In July 2021, this Court dismissed the action for lack of jurisdiction, concluding Florida's registration and reporting requirements for convicted sex offenders did not place Clements "in custody" for habeas purposes. (*First Habeas,* Doc. 51). In February 2023, the Eleventh Circuit affirmed in a published opinion. *Clements v. Florida*, 59 F.4th 1204, 1215–17 (11th Cir. 2023) ("*Clements I*").

In that appeal, Clements argued he was in custody due to restrictions limiting where sex offenders may lawfully reside. *Id.* at 1208. In particular, he highlighted Fla. Stat. § 775.215(2)(a), which prohibited a sex offender like him, whose crime involved a victim less than 16 years of age, from residing within 1,000 feet of any school, childcare facility, park, or playground. *Id.* The Eleventh Circuit also referenced a Lee County ordinance prohibiting sex offenders from "loitering or prowling" within 300 feet of certain locations primarily designated for or used by children, or areas where children congregate, "mirroring Fla. Stat. § 856.022." *Id.* However, the Eleventh

Circuit declined to consider the effect of such residence and ordinance restrictions because Clements had not raised the argument below, and the record on the issue was underdeveloped. *Id.* at 1208–09. Therefore, while affirming the jurisdictional dismissal, the Eleventh Circuit also reserved "for another day" the effects of any residency restrictions. *Id.* at 1208, 1215.

On April 2, 2024, Clements filed this second § 2254 habeas action. (Doc. 1). His *pro se* petition raises four enumerated grounds. All are founded on the premise that his conviction under Fla. Stat. § 800.04 violates the United States Constitution because Florida law allows other adults to have sex with minors like his victim if the adult and minor are married to each other. (*See* Doc. 1 at 5–10). Clements does not allege he and his victim were ever married. That said, he insists his conviction violates the Fourth, Fifth, Sixth, and Fourteenth Amendments; "due process"; and the prohibition against ex post facto laws; and that it amounts to an unlawful bill of attainder.[2]

One section of the habeas petition form asks Clements to explain why he might have failed to file his petition within one year of his state conviction

[2] In March 2024, Clements filed *pro se* action under 42 U.S.C. § 1983 raising similar claims and theories. *See Clements v. Glass*, 2:24-cv-197-JES-NPM, Complaint, Doc. 1 (M.D. Fla. Mar. 13, 2024); *id.*, Third Amended Complaint, Doc. 75 (M.D. Fla. Nov. 20, 2024). The Court dismissed it without prejudice for lack of jurisdiction to the extent that the claims amounted to a collateral attack on his conviction, and the Court dismissed all other claims with prejudice for failing to state a claim under Fed. R. Civ. P. 12(b)(6). *See id.*, Doc. 87, 2025 WL 1068822 (M.D. Fla. Apr. 8, 2025). Clements's appeal of that dismissal is pending. *Clements v. Comm'r Fla. Dep't of Law Enforcement*, No. 26-11655 (11th Cir.).

becoming final, as generally required under 28 U.S.C. § 2244(d). (Doc. 1 at 13). Clements responds by asserting his trial counsel rendered ineffective assistance by failing to raise the purported constitutional infirmity of Fla. Stat. § 800.04 as a defense. Clements also invokes equitable tolling of the limitations period on the ground that the "State of Florida did not disclose the unconstitutionality of the Statutes."

Clements's petition also addresses the "in custody" issue that precipitated the dismissal of his first § 2254 habeas action. (Doc. 1 at 14). He argues that Florida's residence restrictions for sex offenders, which the Eleventh Circuit declined to consider in *Clements I*, together with the registration and reporting requirements, impose limitations on liberty that render him "in custody." Upon initial review of the petition, this Court took up that issue sua sponte and dismissed the action for lack of jurisdiction because *Clements I* had established he is not "in custody." (Doc. 4). Clements moved for reconsideration, which this Court denied. (Docs. 7, 8).

Clements appealed, and the Eleventh Circuit appointed counsel. That appeal yielded *Clements II*. The Eleventh Circuit held that *Clements I* did not foreclose Clements's argument that he is "in custody." *Clements II*, 2025 WL 1892401, at *2. The Eleventh Circuit recognized his argument was based on the residence restrictions, not just the registration and reporting requirements considered in *Clements I*. *Id.* And because *Clements I* reserved the issue of

whether the residence requirements might make a difference, the Eleventh Circuit concluded this Court should have taken up the matter, vacated the dismissal, and remanded the case. *Id.*

Following remand, this Court authorized the parties to research, conduct discovery, and file briefs on the "in custody" issue. (Doc. 23). Respondent has since filed a brief arguing Clements is not "in custody." (Doc. 29). Rather, Respondent maintains, Florida's sex-offender residency restrictions, like the registration and reporting requirements, amount to collateral consequences of Clements's long-expired conviction.

Through counsel, Clements filed a brief arguing to the contrary. (Doc. 31). He attaches a 110-page appendix comprised of an expert report; a newspaper article; declarations from Clements and other witnesses; and state court documents related to Clements's plea agreement, conviction, and sex offender probation. (Doc. 31-1). Clements also filed a "Notice of Intervening Authority" advising that as of March 31, 2026, sex offenders may not reside within 1,000 feet of a "public swimming pool." (Doc. 32). Respondent did not file a reply. After the parties' briefing was complete, Judge Steele passed, and the case was reassigned to the undersigned on July 21, 2026.[3] (Doc. 34).

[3] Shortly before that reassignment, Clements himself filed a "Notice to Court of Conflict of Interests with Judge Sheri Polster Chappel." (Doc. 33). Clements there stated he "asks that Judge Chappell not be appointed to sit on" three cases he had filed and had been assigned to Judge

## II. Discussion

### A. The "In Custody" Issue Revisited

Federal courts may "entertain an application for a writ of habeas corpus in behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphases added). If a petitioner is not "in custody" when he files his petition, federal courts lack jurisdiction to consider it. *See Unger v. Moore*, 258 F.3d 1260, 1263 (11th Cir. 2001).

"As relevant here, custody generally means physical detention or confinement." *Id.* at 1206. Therefore, for example, a petitioner is not "in

---

Steele. This action is one of the three. On it, Clements adds a notation claiming the undersigned "was removed from *Clements I* by the 11th Cir[cuit]." Since the reassignment, neither Clements nor his attorneys have filed a motion asking the undersigned to recuse. In any case, any relief sought by Clements's "Notice" is denied. First, that filing was procedurally improper. Under this Court's Local Rule 2.02(b)(3), "If a lawyer represents a person in an action, the person can appear through the lawyer only." *See also United States v. Smith*, 30 F.4th 1334, 1336 n.1 (11th Cir. 2022). Clements filed the "Notice" himself while represented by attorneys. Second, the undersigned was not, in fact, removed from Clements's first habeas action by the Eleventh Circuit. Clements did file a *pro se* motion in that action asking the undersigned to recuse, which the Court denied. (*First Habeas*, Docs. 13 & 15). Clements pursued an interlocutory appeal of the denial of both that motion for recusal and a motion for injunctive relief. (*See id.*, Doc. 16). The Eleventh Circuit deemed the appeal frivolous, denied Clements's application to proceed *in forma pauperis* (IFP), and dismissed the appeal for failure to pay the filing fee. (*Id.*, Doc. 28; *id.*, Doc. 29). Clements later filed an original *pro se* petition for a writ of mandamus in the Eleventh Circuit, asking it to direct the undersigned to, among other things, recuse from all of Clements's cases. The Eleventh Circuit deemed the petition frivolous, including specifically as it related to recusal; denied Clements's application to proceed IFP; and dismissed the petition for failure to pay the filing fee. (*First Habeas*, Docs. 48 & 49). The Eleventh Circuit's subsequent opinion in *Clements I* did not discuss recusal or any aspect of the judicial assignment of the case in the district court.

custody" where a judgment of the state court imposes only a fine with no provision for incarceration. *Duvallon v. Florida*, 691 F.2d 483, 485 (11th Cir. 1982). However, "certain restraints on a person's liberty, short of physical detention, can satisfy the 'in custody' requirement." *Clements I*, 59 F.4th at 1296. The landmark case is *Jones v. Cunningham*, 371 U.S. 236 (1963), where the Supreme Court held a habeas petitioner was "in custody" based on the conditions of his release on parole. Those included a government right of close supervision and control, which, among other things, confined the petitioner to a "particular community, house, and job," and raised the prospect of his return to confinement with only summary procedure for a violation of his release conditions. *Jones*, 371 U.S. at 242; *see also Olivier v. City of Brandon, Miss.*, 607 U.S. 552, 558 n.2 (2026) ("[A] person on probation is generally 'in custody' for purposes of federal habeas corpus." (internal quotation marks and citation omitted)). The Supreme Court extended *Jones* to a petitioner released on conditions pending the execution of a sentence in *Hensley v. Municipal Ct.*, 411 U.S. 345, 351-52 (1973). The Supreme Court later deemed *Hensley* to support that a petitioner was also "in custody" based on his conditions of release pending retrial. *See Justices of Boston Municipal Ct. v. Lydon*, 466 U.S. 294, 300–01 (1984).

Based on *Jones*, *Hensley*, and *Lydon*, our court of appeals has also held that habeas petitioners released from physical confinement on conditions

imposed by parole, probation, or an order of supervision were "in custody." *See, e.g.*, *Ramdeo v. United States*, 136 F.4th 1348, 1354 n.5 (11th Cir. 2025) ("Both parole and supervised release satisfy the 'in custody' requirement."); *Hamner v. Deputy Sec'y of Fla. Dep't of Corr.*, 438 F. App'x 875, 877 n.1 (11th Cir. 2011) (petitioner was "in custody" where he remained "subject to the terms and conditions of his sex offender probation"); *Marden v. Purdy*, 409 F.2d 784, 785 (5th Cir. 1969)[4] (convicted defendant free on bond); *United States ex rel. Marcello v. Dist. Dir. of INS*, 634 F.2d 964, 970–71 (5th Cir. Jan. 1981) (alien subject to a deportation order released under order of supervision); *Romero v. Sec'y, U.S. Dep't of Homeland Sec.*, 20 F.4th 1374, 1379 (11th Cir. 2021) (alien released under supervision program pending immigration removal proceeding).

On the other hand, the Supreme Court has recognized that when a petitioner's criminal sentence has completely expired before he files a federal habeas action, he is not "in custody" on the associated conviction. *Maleng v. Cook*, 490 U.S. 488, 490-92 (1989); *see also Alaska v. Wright*, 593 U.S. 152, 152–54 (2021) (petitioner not in custody pursuant to judgement of a state court where sentence for Alaska sex offense completely expired before filing of § 2254

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

petition, even though conviction was the predicate for his current federal sentence for failure to register as a sex offender in Tennessee). That is so even if a petitioner might still endure significant collateral consequences from an expired conviction, including the loss of the right to vote, hold public office, serve as a juror, and engage in certain businesses. *See Cook*, 593 U.S. at 492.

Our court of appeals has similarly held that habeas petitioners are not "in custody" on a conviction following the expiration of the sentence despite collateral consequences. Such consequences have included the loss of the right to drive for a year, *see Westberry v. Keith*, 434 F.2d 623, 624-25 (5th Cir. 1970), and the loss of eligibility for military benefits and the stigma of a less-than-honorable discharge, *see Brown v. Sec'y of the U.S. Army*, 859 F. App'x 901, 901–02 (11th Cir. 2021). The Eleventh Circuit has also repeatedly held that petitioners are not "in custody" pursuant to an expired conviction despite its serving as the predicate for an immigration order of removal. *See Patel v. U.S. Att'y Gen.*, 334 F.3d 1259, 1263 (11th Cir. 2003); *Birotte v. Sec'y for Dep't of Corr.*, 236 F. App'x 577, 579 (11th Cir. 2007); *Llovera-Linares v. Florida*, 559 F. App'x 949, 952 (11th Cir. 2014); *McLean v. United States*, No. 21-11902-J, 2021 WL 8692745, at *1 (11th Cir. Dec. 6, 2021).

The Eleventh Circuit applied these principles in *Clements I*. Again, even by the time Clements filed his first habeas action in 2017, his sentence had completely expired. The question, then, was whether post-sentence

requirements Florida law imposed on Clements as a convicted sex offender meant he nevertheless remained "in custody" for habeas purposes. As earlier explained, however, the *Clements I* Court only considered Florida's statutory reporting and registration requirements, not any state or local prohibitions on where Clements might lawfully reside or go. 59 F.4th at 1208–09.

The Eleventh Circuit explained that "the proper inquiry … under *Jones* and its progeny is whether Florida's registration and reporting requirements substantially limit Mr. Clements' actions or movement." *Clements I*, 59 F.4th at 1214. As the Court acknowledged, Florida's registration and reporting requirements are "demanding and not the sort of obligations and restraints 'shared by the public generally.'" *Id.* at 1215 (quoting *Jones*, 371 U.S. at 240). In any event, the Eleventh Circuit considered them "less oppressive in terms of personal liberty than the restraints faced by the parolee in *Jones*, or the persons released on personal recognizance bonds in *Hensley* and *Lydon*, or the noncitizens subject to deportation and under supervision in *Marcello* and *Romero*." *Id.* (citations omitted).

Clements again insists he is "in custody" for purposes of § 2254(a). He again highlights Florida's registration and reporting requirements and their effects on not only him but also other convicted Florida sex offenders. (*See* Doc. 31 at 3, 5–8, 11–13). However, *Clements I* held those requirements do not establish "custody," and that precedent is binding. So the Court's task at

this point is to determine whether any *additional restrictions* on the places where Clements may legally reside and go as a convicted sex offender call for a different result. That said, the Court will consider the sex offender restrictions cumulatively but with the understanding that the registration and reporting requirements addressed in *Clements I* do not themselves render him "in custody." So the Court's focus is on the residence and other restrictions not analyzed in *Clements I*.

Clements relies primarily on Fla. Stat. § 775.215, captioned, "Residency restriction for persons convicted of certain sex offenses." It was recently amended, effective July 1, 2026. The prior version had been in effect since May 12, 2014, so it applied when Clements filed both of his § 2254 actions. As before the amendment, the statute provides that those convicted of certain sex offenses where the victim was then less than 16 years of age, including under § 800.04, "may not reside within 1,000 feet of any school, child care facility, park, or playground." § 775.215(2)(a).

As Clements also highlights (*see* Doc. 32), the amendment adds a new restriction prohibiting sex offenders from residing within 1,000 feet of any "public swimming pool." Fla. Stat. § 775.215(4)(a). That term includes swimming pools "serving subdivisions, apartments, condominiums, mobile home parks, or townhouses, or any pool operated by a governmental entity which is held open to the public" but not pools "at a private single-family

residence, hotel, motel, or recreational vehicle park." § 775.215(1)(d). This new restriction applies to offenders who are convicted or change their permanent residence on or after July 1, 2026, § 775.215(4)(c). Violations of § 775.215 are either felony or misdemeanor offenses. Fla. Stat. §§ 775.215(2)(b), (4)(b).

Clements argues the statute substantially limits housing available to him and other convicted sex offenders as a practical matter, supporting that he is "in custody." He relies on a study by a retained expert, Dr. Kelly M. Socia, a professor at the School of Criminology and Justice Studies at the University of Massachusetts, Lowell. According to the study, as of late 2025, the pre-amendment version of § 775.215 precluded offenders from lawfully living in 45.9% of residential housing units throughout the state; 52.3% of units in Fort Myers, where Clements resides; and 30.1% of units in surrounding Lee County. Dr. Socia adds the pre-amendment statute imposed even greater restrictions in Florida's two most populous counties, Miami-Dade and Broward, where 72.6% and 70.1% of units were put out of bounds, respectively.

Dr. Socia also references a Lee County "Child Safety Zone" ordinance. It does not establish residential restrictions. Rather, it forbids registered offenders from "being on or within" public libraries, fairs, zoos, amusement parks, indoor recreation facilities, public beaches and public parks when

children are present, public swimming pools, and other locations, or "loitering or prowling" within 300 feet of those locations.[5]

The Eleventh Circuit mentioned this Lee County ordinance in *Clements I* but declined to consider its effects because Petitioner had not relied on the ordinance below. *Clements I*, 59 F.4th at 1208. The Eleventh Circuit also characterized the ordinance as "mirroring" a Florida statute, § 856.022. *Id.* At the time of *Clements I*, that statute prohibited registered sex offenders whose crimes involved a victim under 18 years of age from "loitering and prowling" within 300 feet of "a place where children were congregating." Fla. Stat. §§ 856.022(1), (3) (2025). The statute has since been amended, effective July 1, 2026, to increase that distance to 500 feet. Fla. Stat. § 856.022(1), (3) (2026). Both versions also generally prohibit an offender from entering property containing a school or child care facility, except under limited circumstances. §§ 856.022(4)(b), (c) (2025); §§ 856.022(4)(b), (c) (2026). The current statute also forbids offenders from contacting, communicating, or approaching any person under age 18 on any property containing a park, playground, or public swimming pool. § 856.022(4)(a) (2026). The former version contained a similar provision, but it mentioned only parks and

[5] *See* Lee County Code of Ordinances, Ch. 19, Art. III; https://library.municode.com/fl/lee_county/codes/code_of_ordinances (last visited July 21, 2026). *See also Clements v. Lee Cnty., Fla.*, No. 2:24-CV-483-JES-NPM, 2025 WL 2834818 at *1 & n.1 (M.D. Fla. Oct. 7, 2025).

playgrounds and applied only to offenders whose committed their qualifying crime on or after May 26, 2010, which would exclude Clements. Under both versions, a violation of the statute is a first-degree misdemeanor. § 856.022(5). While Clements does reference the Lee County ordinance in his brief, he does not cite § 856.022, although at least parts of it would appear to apply to him. Nor does Dr. Socia's study purport to quantify effects of that statute.

Clements also highlights other city and county ordinances imposing residence restrictions on registered sex offenders. These include an ordinance passed by the City of Cape Coral, adjacent to Fort Myers in Lee County, prohibiting offenders from residing within 2,500 feet of a school or park.[6] According to Dr. Socia, that ordinance, in conjunction with the state statute, restricts 33.2% of residential housing units in Cape Coral. Miami-Dade County also has an ordinance prohibiting offenders from residing within 2,500 feet of any school.[7] Similarly, Broward County has an ordinance prohibiting offenders from residing with 2,500 feet of any school, designated public school

---

[6] *See* City of Cape Coral Code of Ordinances, Ch. 12, Art. VIII, Sec. 12-89; https://library.municode.com/fl/cape_coral/codes/code_of_ordinances (last visited July 21, 2026).

[7] See Miami-Dade County Code of Ordinances, Ch. 21, Art. XVII, Sec. 21-281; https://library.municode.com/FL/Miami_-_Dade_County/CODES/Code_of_Ordinances (last visited July 21, 2026).

bus stop, day care center, park, or playground.[8] Again citing Dr. Socia's study, Clements asserts that those county ordinances, combined with § 775.215, restrict 91.1% of units in Miami-Dade County and 96.5% of units in Broward County, even without considering proximity to school bus stops. Respondent has not sought to exclude or dispute Dr. Socia's determinations regarding the percentages of housing units impacted by § 775.215 or the local ordinances.

Respondent also does not dispute that the Court is to consider § 775.215, at least as it existed before the amendment. That version was in effect when Clements filed this action, and it is as of that time the "in custody" determination is made. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). It is therefore questionable whether the Court might consider the "public swimming pool" residence restriction subsequently imposed by the amendment. It is also not entirely clear whether and to what extent the Court should weigh Fla. Stat. § 856.022 or the various county and city ordinances.

However, Respondent has not contested Clements's reliance on the amendment to Fla. Stat. § 775.215 or the local ordinances. Given that, and because the Court concludes it ultimately would not change the result, the Court will consider the current, amended versions of both Fla. Stat. §§ 775.215

---

[8] See Broward County Code of Ordinances, Ch. 21, Art. XI, Sec. 21-167A; https://library.municode.com/FL/broward_county/codes/code_of_ordinances (last visited July 21, 2026).

and 856.022, and the local ordinances in assessing whether Clements is "in custody" for habeas purposes. *See Wilson v. Flaherty*, 689 F.3d 332, 348 n.8 (4th Cir. 2012) (Wynn, J., dissenting) ("Given the Supreme Court's focus on freedom of movement in its analysis of whether a petitioner has established custody for habeas purposes, it may be necessary to consider the individual and cumulative impact of all regulations that restrict Wilson's movements, including municipal regulations, in a proper analysis of custody.").

Petitioner does not cite, and the undersigned's research does not disclose, a Supreme Court or Eleventh Circuit decision holding *any* set of legal restrictions or conditions rendered a habeas petitioner "in custody" pursuant to a conviction after a sentence has completely expired. *Clements I*'s holding that Florida's sex offender registration and reporting requirements did not put Petitioner "in custody" following the completion of his sentence continues that trend. That is so regardless of any "hesitation" the panel expressed in dicta. *See* 59 F.4th at 1214.

While the Eleventh Circuit declined to consider Florida's residence restrictions in *Clements I*, other federal courts have treated such restrictions like registration and reporting requirements, that is, as collateral consequences of an expired sex offense conviction that do not render a habeas petitioner "in custody." *See Corridore v. Washington*, 71 F.4th 491, 496 (6th Cir. 2023); *Hautzenroeder v. DeWine*, 887 F.3d 737, 743 (6th Cir. 2018); *Dickey*

*v. Allbaugh*, 664 F. App'x 690, 692–94 (10th Cir. 2016); *Spencer v. Bentley*, No. 7:13-CV-00090-RDP, 2015 WL 627965, at *4 (N.D. Ala. Feb. 12, 2015); *Simpson v. Berger*, No. 4:22-CV-00522-SEP, 2024 WL 4188726, at *4 (E.D. Mo. Sept. 13, 2024); *see also Munoz v. Smith*, 17 F.4th 1237, 1245–46 (9th Cir. 2021) (requirement that government approve residence did not place petitioner "in custody"); *Bollo v. Sec'y, Fla. Dep't of Corr.*, No. 24-62146-CIV, 2026 WL 475899, at *2 (S.D. Fla. Jan. 13, 2026) (petitioner failed to present evidence that Florida's residence requirements are so limiting as to place him "in custody"), *report and recommendation adopted*, 2026 WL 473619 (S.D. Fla. Feb. 19, 2026).

Clements cites no decision holding otherwise. Instead, he continues to rely substantially on the Third Circuit's opinion in *Piasecki v. Court of Common Pleas, Bucks County, Pa.*, 917 F.3d 161, 177 (3d Cir. 2019). (Doc. 31 at 6-8, 13). But in holding Florida's registration and reporting requirements do not render Petitioner "in custody," *Clements I* expressly declined to follow *Piasecki*. This Court also does not find *Piasecki* persuasive because it does not specifically address residency restrictions.

Clements also points to non-binding decisions in other circuits holding that a sentence including an outstanding community service requirement placed a habeas petitioner "in custody." *See Barry*, 128 F.3d at 161; *Lawrence v. 48th District Court*, 560 F.3d 475, 480-81 (6th Cir. 2009); *Nowakowski v.*

*New York*, 835 F.3d 210, 216-17 (2d Cir. 2016); *see also Dow v. Circuit Ct. of First Cir.*, 995 F.2d 922, 923 (9th Cir. 1993) (sentence imposing 14 hours of attendance at alcohol rehabilitation program created "custody"). Those courts generally reason that such a sentence requirement restricts freedom of movement by requiring a defendant to appear physically at a specific time and place and perform certain actions.

However, Florida's sex offender requirements at issue are not part of a criminal sentence. *See* Fla. Stat. § 943.0435(12); *State v. Partlow*, 840 So. 2d 1040, 1043 (Fla. 2003). Further, while §§ 775.215, 856.022, and the local ordinances specify locations and facilities that a sex offender is *prohibited* from lawfully residing, entering, and going, they do not require an offender to appear at any specific time or place or to perform an affirmative act. *See Vega v. Schneiderman*, 861 F.3d 72, 75 (2d Cir. 2017) (recognizing that release on condition that petitioner abide by two-year order of protection to stay away from a named individual did not require the petitioner's "physical presence at a particular time or location" nor "affirmatively required" any action; holding petitioner was not "in custody," distinguishing *Nowakowski*); *cf. Patel*, 334 F.3d at 1263 (alien removed from the United States was not "in custody" pursuant to aggravated felony conviction even though such conviction would generally preclude return to the United States).

Like Florida's registration and reporting requirements for convicted sex offenders, Fla. Stat. §§ 775.215, 856.022, and the local ordinances restricting locations and facilities where such offenders might lawfully reside and go impose significant limitations on liberty, including aspects of physical movement. Those burdens are "not shared by the public generally." *Jones*, 371 U.S. at 240.

That said, the Fifth Circuit suggested that habeas "custody" absent physical confinement at least generally requires "at least one" of two conditions, "or perhaps both": (1) "some sort of supervisory control over the defendant" and/or (2) "an imminent possibility of incarceration without a formal trial and criminal conviction." *Spring v. Caldwell*, 692 F.2d 994, 997–98 (5th Cir. 1982). Those on parole, probation, and supervised release typically meet both elements. They are generally subject to placement in, or a return to, physical confinement for a violation of release conditions on procedures that do not include, most notably, the right to a jury trial or that the violation be proven beyond a reasonable doubt. *See Johnson v. United States*, 529 U.S. 694, 700 (2000); *Morrisey v. Brewer*, 408 U.S. 471, 480 (1972). That is not the case here. If the State charges Clements with a violation of Florida's sex offender laws, he will be entitled to a *new* criminal prosecution and conviction, with the full panoply of procedural requirements that would entail.

Even when considered with the registration and reporting requirements, the residence and ordinance restrictions cited by Petitioner do not alter the result reached in *Clements I*. Rather, the additional restrictions are also collateral consequences of Clements's sex offense conviction and do not render him "in custody" for habeas purposes. *See Corridore*, 71 F.4th at 496; *Hautzenroeder*, 887 F.3d at 743; *Dickey*, 664 F. App'x at 692–94; *Spencer*, 2015 WL 627965, at *4. As a result, the Court again concludes it lacks jurisdiction over Clements's habeas petition.

**B. Alternative Merits Determination**

Because this case has been to the Eleventh Circuit and back, and the case is now over two years old, the Court will also explain why Clements's habeas claims would be subject to denial on the merits. *See Rutherford v. McDonough*, 466 F.3d 970, 976 (11th Cir. 2006). At a minimum, Clements's claims are due to be denied because they are untimely and without substantive merit.[9]

[9] Clements's habeas claims are also likely procedurally defaulted for failure to exhaust them in the Florida state courts. *See* 28 U.S.C. § 2254(b). Clements acknowledges he raised the claims in the Florida state courts only in an original petition in the Florida Supreme Court, which he further admits was summarily denied as procedurally barred. (Doc. 1 at 5–6); *see also Clements v. State*, No. SC2023-0918, 2023 WL 5923922 (Fla. Sept. 12, 2023). However, the Court declines to discuss exhaustion further given the other reasons Clements is plainly not entitled to habeas relief.

**1. The Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year statute of limitations for habeas corpus proceedings under § 2254. 28 U.S.C. § 2244(d). The limitations period begins to run from the latest of four possible dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Although Respondent has argued only a lack of jurisdiction (Doc. 29), Respondent has not deliberately waived the statute of limitations as a defense.[10] This Court is therefore permitted to raise the issue sua sponte. *See Day v. McDonough*, 547 U.S. 198, 209 (2006). Clements does not allege—

[10] The State raised the statute of limitations of § 2244(d) as an alternate basis to dismiss Clements's first § 2254 habeas petition. (*See First Habeas*, Doc. 24 at 8-16).

nor does it appear from the record—that any statutory trigger in §§ 2244(d)(1)(B)–(D) applies. So the limitations period is calculated from the date his state judgment became final. § 2244(d)(1)(A).

The state trial court entered a judgment adjudicating Clements guilty on his plea and sentencing him to probation on June 11, 2008. He did not appeal. On January 8, 2009, the trial court entered another judgment that continued Clements's term of probation but adjudicated him guilty of a probation violation and sentenced him to 57 days in jail. He again did not appeal.

Because it does not matter to the result, this Court assumes the January 8, 2009, judgment was a new judgement that reset the one-year federal limitations period of § 2244(d)(1). *See Walden v. Sec'y, Dep't of Corr.*, No. 8:25-CV-2472-MSS-AAS, 2026 WL 1533737, at *2 (M.D. Fla. June 1, 2026) (citing *Murphy v. United States*, 634 F.3d 1303, 1311 (11th Cir. 2011)). Because Clements did not appeal that new judgment, it became final on February 9, 2009, upon expiration of the 30-day period in which he might have filed a timely notice of appeal. *See Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 & n.3 (11th Cir. 2006). The one-year federal limitations period of § 2244(d) then began to run.

The federal limitations period is statutorily tolled during times in which a "properly filed" application for state post-conviction relief "is pending." 28 U.S.C. § 2244(d)(2). On February 17, 2009, Clements filed a *pro se* motion in

the state trial court to withdraw his guilty plea as involuntary. He was appointed counsel, who filed an amended motion to withdraw the plea, citing Fla. R. Crim. P. 3.170(l). However, a motion to withdraw a guilty plea under Rule 3.170 must be filed within 30 days after sentencing. Fla. R. Crim. P. 3.170(l); *Moore v. Bryant*, No. 8:06-CV-1365-T30TBM, 2006 WL 3091530, at *1 n.2 (M.D. Fla. Oct. 30, 2006). Clements missed that deadline, so Fla. R. Crim. P. 3.850(a)(5) was the only rule under which he might have sought to withdraw an "involuntary" plea. *See Moore*, *supra*. The state trial court denied the motion on the merits on April 13, 2009. This Court construes Clements's motion to withdraw his plea as "properly filed" under Rule 3.850 and thus tolling the limitations period under § 2244(d)(2). *See Hardy v. Sec'y for Dep't of Corr.*, 246 F.3d 1300, 1302 (11th Cir. 2001). Upon the filing of that motion, only seven days of the one-year federal clock had run.

Statutory tolling of the federal limitations period continued while Clements's post-conviction motion to withdraw his guilty plea remained "pending" in the Florida state courts. 28 U.S.C. § 2244(d)(2); *see Lawrence v. Florida*, 549 U.S. 327, 332 (2007). Clements timely appealed the trial court's denial of his motion to withdraw his guilty plea but then filed a motion or notice to voluntarily dismiss the appeal on November 24, 2009. The state appellate court formally dismissed the appeal on December 2, 2009. Because it again

makes no difference to the result, the Court assumes the collateral appeal remained "pending" until the latter date.

Meanwhile, on November 25, 2009, Clements filed another *pro se* motion in the state trial court, also seeking postconviction relief under Fla. R. Crim. P. 3.850. On April 28, 2010, the trial court denied that motion on the merits. This Court considers that Rule 3.850 motion a "properly filed" tolling motion under § 2244(d)(2).

However, Clements did not timely appeal the trial court's denial of his later Rule 3.850 motion. While Clements filed numerous applications for belated appeal, those were all denied. Filing an application for belated appeal of an order denying state collateral relief does not toll the federal limitation period unless and until the application is granted. *Bradley v. Sec'y, Dep't of Corr.*, No. 19-12577-F, 2019 WL 5079542, at *1 (11th Cir. Sept. 24, 2019) (citing *Espinosa v. Sec'y, Dep't of Corr.*, 804 F.3d 1137, 1141 (11th Cir. 2015). So Clements's second application for post-conviction relief in state court remained "pending" until May 28, 2010, when the 30-day period to file a notice of appeal expired. *See Cramer*, 461 F.3d at 1383 & n.3. In turn, the one-year federal limitations period again commenced running at that time and expired on May 23, 2011.

Clements did not file this second § 2254 habeas petition until April 2, 2024. That would make it untimely by more than 13 years. However,

Clements also argues he is entitled to equitable tolling of the federal limitations period. Such may apply if a petitioner shows that he has pursued his rights diligently and that some "extraordinary circumstance" stood in his way to prevent timely filing of his habeas petition. *See Holland v. Florida*, 560 U.S. 631, 649 (2010).

The Court liberally construes Clements's petition to make two arguments in support of equitable tolling. First, he offers that his trial counsel was ineffective for failing to raise his present habeas theories that the sex offense statute under which he was charged, Fla. Stat. § 800.04, is unconstitutional because other adults are permitted to have sex with minors to whom they are married. Second, Clements complains that the State of Florida "did not disclose the unconstitutionality" of the sex offense statute.

Neither argument warrants equitable tolling. Even assuming for the sake of argument that Clements's counsel was ineffective for failing to raise Clements's present constitutional theories at trial, that would not explain either how Clements has been diligently pursuing his rights since then or why he could not timely file a federal habeas petition. *See Manborde v. Att'y Gen. Fla.*, No. 24-10843, 2024 WL 6998656, at *2 (11th Cir. Aug. 7, 2024). Clements's other argument is in essence a plea that he is untrained in the law and was therefore ignorant of claims and defenses purportedly available. However, that does not present an extraordinary circumstance as required for

equitable tolling. *See id.* Because Clements is not entitled to equitable tolling, his instant § 2254 habeas petition would be subject to dismissal as untimely. *Cf. First Habeas*, Doc. 28 at 3 (Eleventh Circuit order recognizing that Clements's *first* habeas petition, filed in July 2017, "appears to be untimely" under § 2254(d)(1)(A)).

**2. The Merits of the Claims**

Even assuming this court has jurisdiction and that Clements's habeas petition is timely, he still would not be entitled to relief because his substantive claims have no merit. At the heart of his claims is the argument that the United States Constitution prohibits Florida from enforcing statutory rape laws and the like, including Fla. Stat. § 800.04, which criminalize non-forcible sexual activity between adults and minors under the age of consent, because Florida does not similarly criminalize such sexual activity between persons married to each other. However, courts have uniformly held such laws do not violate the Equal Protection Clause of the Fourteenth Amendment based on their differing treatment of married and unmarried persons, concluding they have a rational basis. *See State v. Holm*, 137 P.3d 726, 751–52 (Utah. 2006); *Crooks v. State*, 125 P.3d 1090 (table), 2006 WL 90104, at *8–10 (Kan. Ct. App. 2006); *State v. Howard*, 580 S.E.2d 725, 730 (N.C. Ct. App. 2003); *Com. v. Gautieri*, 636 A.2d 1153, 1155–56 (Pa. Super. Ct. 1994); *State v. Barlow*, 630

A.2d 1299, 1300–01 (Vt. 1993); *State v. Taylor*, 726 S.W.2d 335, 337 (Mo. 1987). The Court concludes that is also true of Fla. Stat. § 800.04.

Clements also claims the difference in treatment between married and unmarried persons renders the statute violative of federal constitutional provisions besides the Equal Protection Clause. His petition cites the Fourth, Fifth, Sixth, and Fourteenth Amendments generally, "due process," and the constitutional prohibitions against bills of attainder and ex post facto laws. However, he fails to articulate any facts or argument supporting that the differential treatment between married and unmarried persons under § 800.04 violates any of these other constitutional provisions. As a result, his allegations fail to state viable claims for habeas relief under any of these provisions.

Finally, to the extent that Clements might be attempting to raise other claims, the Eleventh Circuit has previously rejected § 1983 claims by Clements challenging Florida's sex offender registration and reporting scheme under Fla. Stat. § 943.0435 and 775.21 as violative of the Fourth, Fifth, Sixth, and Fourteenth Amendments and the constitutional prohibitions against bills of attainder and ex post facto laws. *See Clements v. Governor of Fla.*, No. 23-11731, 2024 WL 710607, at *3 (11th Cir. Feb. 21, 2024) (citing *Houston v. Williams*, 547 F.3d 1357, 1364 (11th Cir. 2008) (citing *Smith v. Doe*, 538 U.S. 84, 105–06 (2003))), *aff'g Clements v. DeSantis*, No. 4:23-CV-24-AW-MAF, 2023

WL 3727259 (N.D. Fla. May 12, 2023). As a result, any attempt by Clements to resurrect such claims is "foreclosed both by his prior litigation and by precedent." (Doc. 25 at 4-5); *Clements v. Glass*, No. 2:24-CV-197-JES-NPM, 2025 WL 1068822, at *4 (M.D. Fla. Apr. 8, 2025), *reconsideration denied*, No. 2:24-CV-197-JES-NPM, 2026 WL 910766 (M.D. Fla. Apr. 2, 2026), *reconsideration denied*, No. 2:24-CV-197-JES-NPM, 2026 WL 1248355 (M.D. Fla. May 6, 2026).

## IV. Conclusion

Accordingly, it is hereby **ORDERED**:

(1) Petitioner Louis Matthew Clements's § 2254 petition for habeas corpus relief (Doc. 1) is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.[11]

(2) The Clerk is directed to enter judgment, term all pending motions, and close the case.

**DONE and ORDERED** in Fort Myers, Florida on September 30, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-3
Copies furnished to: Counsel of Record

[11] Because the Court concludes it lacks jurisdiction, it is unnecessary to consider whether to grant a certificate of appealability under 28 U.S.C. § 2253(c). *See Holland v. Sec'y, Fla. Dep't of Corr.*, 941 F.3d 1285, 1287 n.2 (11th Cir. 2019).